2014 VT 89

## State of Vermont v. Harold D. Porter, Jr.

[103 A.3d 916]

No. 12-344

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed August 1, 2014

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

*Bradley S. Stetler* of *Stetler, Allen & Kampmann, Burlington, Edward A. Brill* and *Rebecca L. Berkebile* of *Proskauer Rose LLP,* and *Karen A. Newirth, Barry C. Scheck,* and *M. Christopher Fabricant,* New York, New York, for Amicus Curiae The Innocence Project, Inc.

¶ 1. **Crawford, J.** Defendant Harold D. Porter, Jr. appeals from his conviction for attempted kidnapping. He argues that the trial court erred in (1) refusing to grant a motion for a new trial because the prosecution failed to disclose important expert testimony; (2) admitting the testimony of·police officers that they had

ruled out other suspects based on interviews with out-of-court declarants; (3) admitting eyewitness identification testimony; (4) failing to dismiss the case for failure to preserve and test potentially exculpatory evidence; and (5) excluding the testimony of defendant's expert on police procedures. We reverse and remand.

¶ 2. The following facts were established at defendant's March 2012 trial. On the evening of September 9, 2009, the complainant was walking home along Colchester Avenue in Burlington when an unknown man attacked her and tried to force her into the cab of a pickup truck that was parked alongside the road. He punched her repeatedly in the face and she fell to the ground. He pinned her to the ground with his knee. She started screaming "rape." At one point he shoved his finger into her mouth and she bit him. He got up and she managed to escape. She ran to a nearby house and rang doorbells until someone let her in. The assailant drove off in the truck. Police and an ambulance arrived soon afterwards.

¶ 3. Several people witnessed the event and offered descriptions of the assailant and the truck to police. One eyewitness chased after the truck as the assailant left and saw that the license plate was the green color of a Vermont plate, although he could not see the numbers because they were obscured by the tailgate. The complainant described the man as a middle-aged white male with no beard or mustache who was about her height, 5'11", but could not otherwise identify him.

¶ 4. While the assailant's truck was parked on the side of the road, a Chittenden County Transportation Authority (CCTA) bus passed by. Two video cameras attached to the bus captured images of the assailant's truck at the location identified by the complainant.

¶ 5. In the course of their investigation, police showed the videos to the manager of a local Chevrolet dealership. He identified the truck as a light-colored Chevrolet one-ton dual-rear-wheel pickup truck with four doors, a flaring fender, a distinctive front bumper and headlights, and a contractor's rack on the back. He believed that the car was gas-powered because he did not see a diesel badge on the driver's-side door. He further believed that the truck was likely to have four-wheel drive. Based on these characteristics, he told police that the truck's vehicle identification number (VIN) would contain the sequence "K33" in the fifth, sixth, and seventh position.

¶ 6. Using the VIN parameters provided by the manager of the Chevrolet dealership, the Vermont Department of Motor Vehicles produced a list of approximately twenty gray or silver trucks registered in Vermont.[1] Police contacted the owners of each truck, and eventually ruled out every truck except for defendant's.

¶ 7. Defendant was arrested and charged with attempted kidnapping, aggravated assault, and unlawful restraint. The latter two charges were eventually dismissed by the State. Defendant's first trial in July 2011 ended in a mistrial when the jury was unable to reach a verdict. A second jury trial in March 2012 resulted in a guilty verdict. Defendant was sentenced to serve thirty years to life. This appeal followed.

## I. Testimony of Police Officers Ruling out Trucks Other Than Defendant's

¶ 8. One of the critical issues at trial was the identification of defendant's truck using video from the CCTA camera at the scene of the crime. Because the truck was relatively unique, police investigators working with the Department of Motor Vehicles were able to identify approximately twenty vehicles registered in Vermont which matched the make and color of the truck seen on camera. Ten vehicle owners testified at trial for the purpose of eliminating their truck or trucks from identification. The police interviewed five other owners prior to trial. These owners did not testify at trial. Instead, the investigating officers testified that based on the out-of-court interviews with the owners, the officers were able to eliminate those remaining trucks from the identification process.

---

[1] The testimony at trial was somewhat unclear as to how many trucks and their owners were investigated by police. The exhibits produced by the State show that the police and DMV generated two lists, totaling 32 trucks. Nine trucks were included on both lists, and the lists included three duplicates, so there were actually 20 unique trucks. One of the trucks was owned by defendant. Ten other truck owners — Short, Boyce, Stocker, Bibeau, Lantagne, Sogoloff, Valcour, Ryan, Geno, and Blais — testified at trial. Blais and Valcour each owned two trucks on the list. Police testified that they interviewed owners Sullivan, Vikse, Fox Run Limited, Gray, and Tamiso and eliminated them as suspects. The name Sullivan does not appear on the list, and two trucks on the list are unaccounted for: those owned by Lands End Farm and Arnold. Assuming that Sullivan is the owner of one of these two trucks, that leaves one truck unaccounted for. This issue was not raised by either the State or defendant on appeal, and for our purposes here we assume that police ruled out all of the owners except for defendant.

¶ 9. ■ The first issue is whether defense counsel offered a sufficient objection at trial to this testimony. See *State v. Decoteau*, 2007 VT 94, ¶ 10, 182 Vt. 433, 940 A.2d 661 ("The party opposing introduction of evidence must object at the time the evidence is offered to preserve this issue for appeal."). Prior to the testimony of Detective Carlson, who had contact with two of the vehicle owners who did not testify, defense counsel objected in the following terms:

> [M]y understanding is that this [testimony about the remaining trucks] is just what was reported to him and what was provided to him through photographs that he doesn't have any individual foundation to establish . . . [W]e move to exclude him on that basis . . . .
>
> . . . .
>
> The difference is all the other truck owners are going to be here — my understanding is they're going to be here to testify on their own. Detective Carlson is acting as a substitute for these other two. So this isn't something that can be tied in later with independent evidence, this is just [the detective] coming in and saying well, they said they weren't here and so they weren't here.

The court ruled that the officers could testify about what they had learned from the remaining vehicle owners, but that the State could not elicit "hearsay statements as to what the person told the police officer." When the same issue arose during the testimony of three detectives, defense counsel renewed his objection on the ground of "foundation based on hearsay" and "objection based on hearsay." Over these objections, the court permitted the State to introduce testimony from the detectives concerning their elimination of four trucks from involvement in the crime.[2]

¶ 10. ■ ■ We are satisfied that the objections were sufficient to preserve the issue of admissibility of the testimony under Vermont Rule of Evidence 602. The issues of hearsay and

---

[2] In its brief, the State points out that the first objection to the testimony of Detective Carlson was withdrawn. That objection, however, went to a question of more limited scope, which was whether the truck owner confirmed that a photograph showed his truck. When the question of whether the detective could eliminate the truck from suspicion was asked, defense counsel stated a hearsay objection.

personal knowledge are closely linked in this case. A police officer's repetition of a statement made by a vehicle owner would raise issues under the hearsay rule. Testimony that a truck was eliminated from suspicion based on the owner's out-of-court statement raises a slightly different question under Rule 602. In considering the preservation issue, courts have generally considered a hearsay objection sufficient to alert the trial court to the issue even when the precise objection arises under Rule 602. *United States v. Davis*, 596 F.3d 852, 856 n.2 (D.C. Cir. 2010); *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 374 (5th Cir. 1980); *State v. Okumura*, 894 P.2d 80, 95-96 (Haw. 1995), *overruled on other grounds by State v. Cabagbag*, 277 P.3d 1027, 1040 (Haw. 2012). But see *United States v. Stout*, 599 F.2d 866, 869 (8th Cir. 1979) (holding that police officer's testimony that eight people were in bank at time of robbery, which was based on his interviews of other witnesses, was admissible over hearsay objection). In this case, the shorthand objection on hearsay grounds was supplemented by the prior discussion at the bench of the issue. Defense counsel plainly registered an objection not only to the officers' recitation of statements by the owners who were not present, but also to testimony from ·the investigating officers concerning their conclusions about which trucks they could exclude from further suspicion.

¶ 11. We turn now to the merits of the dispute over admissibility. We begin our analysis with Rule 602, which provides in relevant part that "[t]he testimony of a witness may be excluded or stricken unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."

¶ 12. In this case, the witnesses knew only what the vehicle owners told them. These statements were not independently admissible as, for example, admissions by a party opponent. See *In re Estate of Maggio*, 2012 VT 99, ¶ 27, 193 Vt. 1, 71 A.3d 1130 (holding that evidence admissible as party-opponent admissions under Rule 801(d)(2) need not satisfy personal knowledge requirement of Rule 602). Nor were the statements offered as the basis for an expert opinion. See V.R.E. 703 (providing that facts relied upon by expert witness need not be admissible for expert's opinion to be admitted, if facts are reasonably relied upon by experts in the field). Instead, this is a case in which the substance of hearsay statements was introduced in the guise of conclusions reached by the witnesses. Permitting the witnesses to testify

about their conclusions violated the personal knowledge requirement of Rule 602.

¶ 13. ■ The need to guard against the admission of the substance of out-of-court statements has long been recognized by the courts and commentators. The reason for the exclusion is the same as for hearsay: the fact-finder has no basis for judging the reliability of the information because the credibility of the declarant cannot be challenged. This case illustrates the problem very clearly. A truck owner who testifies that his truck was elsewhere on the date of the crime can be cross-examined on issues of memory, mistake, actual knowledge, and other factors that may reduce the reliability of his statement. The same information passed along to an investigator in a private conversation cannot be challenged in any meaningful way because the declarant is absent.

¶ 14. ■ The authors of 27 C. Wright et al., Federal Practice and Procedure (2d ed. 2007), warned against the admission of out-of-court statements as the basis for testimony by investigators and others who heard these statements:

> One of the most common grounds for a Rule 602 objection is that the witness' testimony is based on the observation of others as reflected in their hearsay statements. While a witness who gives testimony containing hearsay may have perceived an out of court statement with her senses, the testimony is offered to prove facts observed by the hearsay declarant, not the witness. Thus, the personal knowledge requirement is satisfied only where the testimony of a witness who quotes an out of court statement is offered for the limited purpose of proving that the out of court statement was made or that the witness heard the statement made. The requirement might not be satisfied if the testimony is offered to prove the facts asserted in the statement.

*Id.* § 6026, at 252-53. In this case, the out-of-court statements about the trucks were relevant only for their truth. Information about the location of the other trucks was introduced only because, if true, it eliminated other suspects and focused suspicion on defendant.

¶ 15. ■ Turning to the specific facts of this case, it is clear that the investigating officers had no basis upon which to offer admissible testimony that the information they received from the truck owners met the personal knowledge requirement of Rule 602. Such testimony would have to come from the declarants themselves — which would have removed any need for repetition through the officers. In fact, that was the course the State followed with the majority of the other truck owners who appeared live at trial. In the absence of evidence that the statements were based on personal knowledge, the requirement of Rule 602 was not met and the testimony of the officers should have been excluded.

¶ 16. ■ We consider finally whether the admission of the officers' testimony was prejudicial to defendant. See *State v. Mumley*, 2009 VT 48, ¶ 20, 186 Vt. 52, 978 A.2d 6 ("When conducting a harmless-error analysis to determine whether the jury would have convicted without the offending evidence, we consider the extent to which the offending evidence was inculpatory, whether it was cumulative or duplicative of other evidence, and how prominent it was at trial."); V.R.Cr.P. 52(a) (stating that "[a]ny error . . . which does not affect substantial rights shall be disregarded"). The identification of defendant's truck as the truck caught on video at the scene was one of the principal pieces of evidence connecting defendant to the crime. All trucks of the correct make, model, and color registered in Vermont were identified. The State called ten witnesses who owned the same type of vehicle to demonstrate that they could not have been involved in the crime. The elimination of the remaining trucks through the testimony of the officers closed the circle on that issue — essentially identifying defendant as the last possible owner of that type of vehicle in the entire state. In closing, the State described its success in narrowing the inquiry to defendant in the following terms:

> And on Monday, you saw the people coming back and forth from all across the state of Vermont; truck owners, police officers, all telling you about their trucks and why they were eliminated as being involved in this attempted abduction. Everyone was eliminated except one truck; [defendant]'s truck.

¶ 17. ■ In arguing that there was no prejudice, the State points to other evidence linking defendant to the truck shown on video at the crime scene. While several witnesses testified that defendant's truck looked similar to the truck shown on the CCTA video, this testimony was not cumulative with the officers' testimony, because it did not rule out other similar trucks. The admission of impermissible evidence through three successive witnesses on a central issue in the case is sufficient to demonstrate prejudice to defendant. Under the circumstances, we cannot say beyond a reasonable doubt that the jury would have convicted defendant if the testimony had not been admitted. See *State v. Brillon*, 2010 VT 25, ¶ 21, 187 Vt. 444, 995 A.2d 557 (holding that it was not harmless error to admit condition-of-release order where prosecution's case relied heavily on order).

¶ 18. Accordingly, we reverse the conviction on this ground. Although our ruling on the admission of the officers' testimony is dispositive of this appeal, we will address other issues raised by defendant because they have the potential to reoccur at a subsequent trial. We do not reach the issue of the claimed discovery violation, however, because the evidentiary error is a sufficient basis for reversal and on retrial there can no longer be any secret about the testimony of the State's expert witness.

## II. Identification Testimony of Eyewitness

¶ 19. At both trials, the State called an eyewitness who did not see the assailant's face and was unable to describe the assailant in detail shortly after the incident but later told police, after seeing defendant's picture broadcast on television news, that defendant was the assailant. Defendant claims that the admission of this testimony violated his right to due process under Article 10 of the Vermont Constitution because the court did not find that it was reliable despite the suggestive circumstances. Defendant also claims that the testimony should have been excluded under Rule of Evidence 403.

¶ 20. When faced with a claim that a defendant was denied due process by a suggestive eyewitness-identification procedure, this Court applies the standard set forth in *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). See *State v. Kasper*, 137 Vt. 184, 192, 404 A.2d 85, 90 (1979) (adopting *Manson* test). Under *Manson* and *Kasper*, a court first must examine whether an identification arranged by law enforcement was unnecessarily suggestive. *Id.* If it was, the

identification may still be admissible if certain indicia of reliability outweigh the "corrupting effect of the suggestive identification." *Id.* " 'These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.' "[3] *Id.* at 192-93, 404 A.2d at 90 (quoting *Manson*, 432 U.S. at 114).

¶ 21. ▮ However, the U.S. Supreme Court has made clear that the Due Process Clause of the Fourteenth Amendment is not implicated where law enforcement did not arrange the suggestive circumstances surrounding an identification. See *Perry v. New Hampshire*, ___ U.S. ___, ___, 132 S. Ct. 716, 730 (2012) (holding that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement"). Under *Perry*, defendant is precluded from bringing a due process challenge under the federal constitution to the eyewitness identification in this case.

¶ 22. ▮ Defendant asserts that this Court should reject the rationale of *Perry* and hold that all suggestive eyewitness identifications, not just those arranged by law enforcement, are subject to the equivalent due process guarantee of the Vermont Constitution, Vt. Const. Ch. I, Art. 10. Defendant offers no substantive analysis or argument to support the creation of a different standard under Article 10. As it is inadequately briefed, we will not address such an argument. *Trudell v. State*, 2013 VT 18, ¶ 30, 193 Vt. 515, 71 A.3d 1235 ("[A] party's failure to present any

---

[3] Amicus curiae urges this Court to modify or abandon the *Manson/Kasper* test because some of the factors it relies upon have been shown to be poor measures of reliability while other, better indicators of reliability are not included in the test. We acknowledge that modern scientific evidence has raised doubts about some of the traditional indicia of reliability listed in *Manson* and *Kasper*. However, we decline to revisit those factors in the absence of an evidentiary record developed in the trial court.

We note — although it is not relevant to this case — that the Legislature has recently enacted a law requiring every Vermont law enforcement agency to adopt an eyewitness-identification policy that contains certain minimum standards for conducting show-up and lineup identifications. 2013, No. 193 (Adj. Sess.), § 1 (to be codified at 13 V.S.A. § 5581).

substantive analysis or argument on state constitutional issues constitutes inadequate briefing, which we decline to address.").

¶ 23. Defendant further argues that the eyewitness identification should have been excluded under Rule 403, which permits the trial court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

¶ 24. Defendant objected to the eyewitness's testimony on Rule 403 and due process grounds during the first trial. The trial court held a preliminary hearing on the admissibility of the eyewitness's testimony. The eyewitness testified that the assailant had a medium to stocky build and curly hair. He told police at the crime scene that he never saw the assailant's face and could not identify him in a photo lineup. Later, after he saw defendant's picture on television, he felt "ninety-nine percent sure" that defendant was the assailant. The court ruled that the witness could not testify that defendant was the assailant because the identification was made under "very, very suggestive" circumstances. However, it allowed the witness to testify that the picture of defendant that he saw was similar to the assailant.

¶ 25. At the second trial, defendant again objected to the eyewitness's testimony on due process and Rule 403 grounds. The court reviewed the testimony from the first trial. The court ruled that it would be "unduly prejudicial, despite the ability of cross-examination, to allow the testimony as offered by the State." It therefore limited the eyewitness's testimony in the same manner as the first trial court.

¶ 26. ▮ The trial court has broad discretion to balance the probative value of evidence against its prejudicial effect, and we will reverse its decision only if discretion was withheld or exercised on grounds clearly unreasonable or untenable. *State v. Brochu*, 2008 VT 21, ¶ 51, 183 Vt. 269, 949 A.2d 1035. In this case, the trial court exercised discretion by reviewing the eyewitness's testimony from the first trial and weighing the probative value of the identification against the danger of unfair prejudice. The court recognized that it would be unfair to allow the eyewitness to testify that defendant was the same person that he saw at the crime scene, given the amount of time that had passed and his statements to police at the scene that he did not see the assailant's face and could not identify him in photo lineup. It

accordingly limited the State to asking whether the picture of defendant was similar to the man he saw. The court noted that defendant could challenge the identification through cross-examination. The court's ruling was not clearly unreasonable or untenable. The identification had probative value, and its prejudicial effect was lessened by the court's ruling and the opportunity for cross-examination. On remand, defendant is free to offer expert testimony and advocate for a different legal standard, but on the record below, the trial court did not abuse its discretion by admitting the testimony.

### III. Failure to Preserve and Test Evidence with Exculpatory Potential

¶ 27. Defendant argues that the case should have been dismissed because the State failed to collect, preserve or test four items of potentially exculpatory evidence: blood that was on the complainant's face the night of the incident; fingernail clippings and scrapings from the complainant from the night of the incident; clothes worn by the complainant; and hairs that were found with the complainant's clothes. Prior to the March 2012 trial, defendant filed a motion to dismiss, arguing that the failure of police to collect and test the above evidence violated Article 10 of the Vermont Constitution and the line of cases beginning with *State v. Bailey*, 144 Vt. 86, 475 A.2d 1045 (1984). The trial court denied the motion to dismiss, but issued a corrective instruction to the jury.[4]

¶ 28. ▓▓▓ The State is obligated, as a matter of due process, to disclose to the defense any exculpatory material within its possession or control. See *Brady v. Maryland*, 373 U.S. 83, 86-88 (1963); V.R.Cr.P. 16(b)(2). The State may violate this burden of production if it destroys, loses or fails to preserve potentially exculpatory evidence. *State v. Gibney*, 2003 VT 26, ¶ 35, 175 Vt. 180, 825 A.2d 32; *State v. Delisle*, 162 Vt. 293, 309, 648 A.2d 632,

---

[4] The court instructed the jury as follows:

If you find that the police failed to collect and then test important evidence which might have identified the assailant as someone other than [defendant], and you are not satisfied with the state's explanation for the failure to collect and test the evidence, then you may draw an inference that the potential evidence would have been favorable to [defendant].

642 (1994). To be entitled to sanctions under the Vermont Constitution and our decision in *Bailey*, the defendant need not prove that the missing evidence would be exculpatory, "but must show only a 'reasonable possibility' that it would have been favorable."[5] *Bailey*, 144 Vt. at 94, 475 A.2d at 1050. If the defendant makes such a showing, the court must determine whether sanctions are warranted based on "'a pragmatic balancing' of three factors: (1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial." *Id.* at 95, 475 A.2d at 1050.

¶ 29. ▮▮▮ Defendant argues that the failure to collect evidence in the first place is equivalent to destroying, losing, or failing to preserve exculpatory evidence. We disagree. The police do not have a duty to collect all evidence that could potentially favor the defense. See *State v. Smith*, 145 Vt. 121, 127, 485 A.2d 124, 128 (1984) ("The State's duty to preserve evidence obviously arises only if the State has possession of it."); *Bailey*, 144 Vt. at 94-95, 475 A.2d at 1050 (noting that State's "duty of disclosure attaches in some form once the [g]overnment has first gathered and taken possession of the evidence in question" (quotation omitted)); see also *State v. Ware*, 881 P.2d 679, 683 (N.M. 1994) (stating rule that prosecution "generally has no duty to collect particular evidence at the crime scene"). However, as we have previously recognized, "[t]here could arise situations in which negligent conduct of the police is sufficiently prejudicial to the defense to warrant" sanctions. *State v. Wheelock*, 158 Vt. 302, 312, 609 A.2d 972, 978 (1992). In such situations, the *Bailey* test is an adequately flexible method to determine the appropriate sanction. We see no reason to adopt a new test for a failure to collect evidence, as the State urges.

¶ 30. In this case, the trial court appropriately applied the *Bailey* test and determined that the failure to preserve the

---

[5] In *Arizona v. Youngblood*, the U.S. Supreme Court held that where the exculpatory value of the evidence is unknown, there is no violation of the Fourteenth Amendment's Due Process Clause for failure to preserve potentially useful evidence "unless a criminal defendant can show bad faith on the part of the police." 488 U.S. 51, 58 (1988). This Court has adopted a different standard under Chapter I, Article 10 of the Vermont Constitution, "which guarantees that a defendant can call for evidence in his favor." *Gibney*, 2003 VT 26, ¶ 37 (quotation omitted). In *State v. Delisle*, we determined that *Youngblood* was "both too broad and too narrow," and readopted as our state constitutional standard the test set forth in *Bailey*. 162 Vt. at 310-11, 648 A.2d at 643.

evidence did not violate Article 10. We need not review the trial court's conclusion here, as the *Bailey* test depends on the evidence of guilt produced at trial, which will likely be different in the event that a third trial occurs. Should defendant renew his motion, the court will be obligated to reweigh the various factors in light of the evidence presented.

## IV. Exclusion of Defendant's Expert on Negligence of Police Procedures

¶ 31. Prior to the first trial, defendant disclosed that he intended to call an expert witness on police evidence-gathering methods to explain to the jury the significance of the failure by police to collect the physical evidence. The court ruled that the proffered testimony was not relevant and excluded the witness. The judge who presided at the second trial adopted the first judge's decisions on all prior motions and objections at a pretrial hearing. Defendant renewed all of his previous motions and objections at the second trial.

¶ 32. ■■■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. The court instructed the jury that it could draw an inference in favor of the defendant if the jury did not find the State's explanation for why the evidence was not collected and tested to be adequate. The proffered testimony would challenge that explanation. It was therefore relevant, and the trial court erred in excluding the testimony on that basis. We make no ruling, however, on whether the testimony was otherwise admissible under the rules of evidence.

*Reversed and remanded for further proceedings consistent with this decision.*