2015 VT 11

## State of Vermont v. Gordon Noyes, Jr.

[114 A.3d 1156]

No. 13-392

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Maley, Supr. J., Specially Assigned**

Opinion Filed January 23, 2015

362

*William H. Sorrell,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio,* Defender General, *Marshall Pahl,* Appellate Defender, and *Megan Rowe* and *Casey Ryder,* Law Clerks (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Maley, Supr. J., Specially Assigned.** Defendant Gordon Noyes, Jr., appeals from his convictions for disorderly conduct and simple assault by mutual affray following a jury trial. He argues that reversal is warranted because: (1) the prosecutor improperly elicited evidence suggesting that defendant was having an affair with his stepdaughter; (2) the court erroneously allowed the State to confront its witness with a prior inconsistent statement; (3) the prosecutor improperly led witnesses and made comments on the evidence; and (4) the evidence was insufficient to support his disorderly conduct conviction. We affirm.

¶ 2. This case stems from a fight between defendant and his brother. Various witnesses provided conflicting accounts of the altercation. The State presented evidence that, on the day in question, brother visited defendant's home. When brother arrived, defendant was talking to his stepdaughter on the computer. Brother testified that defendant immediately began to yell, stating "you were running your mouth at the bar the other night." Defendant then accused his brother of telling people that defendant was having an affair with the defendant's stepdaughter. Brother denied saying anything regarding the defendant and his

stepdaughter. Nevertheless, according to brother, defendant pushed him, and brother pushed back. Defendant then grabbed his brother, and eventually both fell to the floor.

¶ 3. Defendant's daughter provided a conflicting account of the events. She testified that the two men briefly argued and that brother left the home after defendant "politely asked him to leave, and he did." She recalled then that "he stormed back in and he started screaming at my dad, and he shoved my dad into the stove." Daughter also claimed that brother pushed the defendant to the floor. Another household member, defendant's stepson, recalls that both men argued and that they fell to the floor. Defendant then told his brother to leave. By all accounts the men then continued their dispute outside with brother exiting first and defendant following close behind. Once outside the fracas began again with both men shouting and taunting each other. Again, certain details of the events vary between witnesses.

¶ 4. Brother testified that, when the men were outside, daughter pushed him. Daughter recalls that she was trying to separate brother from defendant. At one point during the fight, defendant got on his knees, telling his brother to "take your best shot." There is no evidence that brother attempted to strike defendant, but according to daughter, while defendant was kneeling, brother exposed himself to defendant. Shortly thereafter, according to brother, defendant struck him in the face. The police were called, and a police officer observed a scrape on brother's chin.

¶ 5. A neighbor and acquaintance of both men also testified for the State. Neighbor was not present during the fight, but she testified that defendant told her that he beat brother up and that he "punched [brother] so hard that he went flying from the trash to his mom's bedroom." She maintained that defendant's story would "change all the time." Neighbor eventually acknowledged signing a typed statement, which was apparently notarized, in which she asserted that defendant told her that he had lied to the police. Neighbor testified that she was living with brother and his wife at the time that this statement was written, and that brother's wife had typed the statement for her. She indicated that the document she signed was not notarized and that the notarization must have been added at a later time. On cross-examination, neighbor acknowledged writing another statement, closer in time to the fight. In that statement, she wrote that brother told her that he had pushed defendant across the room,

slammed defendant to the ground, and that, when defendant was on his knees, brother had put his hands on his own penis and made a crude comment.

¶ 6. On cross-examination, the prosecutor asked daughter who defendant had been talking to when brother arrived. The prosecutor then pointed out defendant's stepdaughter in the courtroom. He asked if the stepdaughter was "married to your father at the present time," and if there was "a relationship between the two of them at the present time." Defendant objected to these questions after they had been answered, and, given the untimely objection, the court allowed the answers to stand.

¶ 7. Daughter testified that she did not know why the men were arguing. The prosecutor questioned how that was possible given that she was present during the fight. Defendant objected, arguing that evidence relating to the basis for the argument was irrelevant, inappropriate, and prejudicial. The court overruled the objection, finding that evidence about defendant's relationship with his stepdaughter was not being offered for its truth but rather to show the cause of the parties' dispute.

¶ 8. The prosecutor then called brother as a rebuttal witness and returned to the cause of the parties' argument. Brother repeated that defendant was angry because he thought he was talking about defendant's relationship with his stepdaughter. Brother indicated that, at that time, defendant was married to his stepdaughter's mother. Brother again denied telling others that defendant was having an affair with his stepdaughter. The jury found defendant guilty of simple assault by mutual affray and disorderly conduct.

¶ 9. Defendant moved for a new trial, arguing in part that the State had unlawfully interjected irrelevant and prejudicial allegations that he was having sex with his stepdaughter. Defendant also asserted that the court erred in allowing the State to present a falsified letter from neighbor in its case-in-chief. The court rejected these arguments and denied the motion for a new trial. This appeal followed.

I.

¶ 10. Defendant first asserts, as he did in his motion for a new trial, that the prosecutor improperly elicited evidence suggesting that he was having an affair with his stepdaughter. He argues that such evidence was irrelevant, unduly prejudicial, and not a

proper subject for rebuttal. According to defendant, the court's ruling at trial — that this evidence was not offered for its truth — was incorrect and came too late. Defendant also maintains that, given the prejudicial effect of such evidence, the prosecutor should have obtained the court's permission to ask questions about the cause of the fight, and the court should have stepped in to restrain the scope and the impact of the evidence.

¶ 11. The trial court concluded that defendant's right to a fair trial was not impaired by the admission of this evidence. We agree. See *State v. Bruno*, 2012 VT 79, ¶ 16, 192 Vt. 515, 60 A.3d 610 (Supreme Court reviews trial court's ruling on motion for new trial "for abuse of discretion, and will not overturn the trial court's decision unless the court abused or withheld its discretion").

¶ 12. ■■ ■ As an initial matter, we reject defendant's assertion that the court's ruling at trial was somehow belated. The trial court ruled on this issue as soon as defense counsel raised a timely objection to it. See, e.g., *Deyo v. Kinley*, 152 Vt. 196, 200, 565 A.2d 1286, 1289 (1989) ("The purpose of requiring a timely objection is to bring the error to the attention of the trial court so that the court may have 'an opportunity to rule.'" (quoting *State v. Chambers*, 144 Vt. 234, 242, 477 A.2d 110, 114 (1984))). As set forth above, brother testified without objection on direct examination that defendant was upset because he believed that brother had been spreading rumors about defendant sleeping with his stepdaughter. Defense counsel elicited the same testimony on cross-examination. Brother denied spreading such rumors. It was not until the prosecutor was cross-examining daughter about the basis for the parties' argument that defendant raised a timely objection on relevance and prejudice grounds. The court then overruled the objection, finding that the evidence was not offered for its truth, but rather, to show that brother and defendant were discussing this issue at the time of the fight. The court's ruling was timely.

¶ 13. The court also acted within its discretion in admitting this evidence. See *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988) (recognizing that trial court has wide discretion in ruling on admissibility of evidence, and its rulings will not be set aside unless defendant shows that such "discretion was either totally withheld or exercised on grounds clearly untenable or unreason-

able" (quotation omitted)). Defendant suggests that "the existence of an argument between defendant and [brother] was not at issue in the case." He maintains that by inquiring into this subject the prosecutor was not trying to elicit relevant testimony but was instead seeking to put improper matters and commentary before the jury.

¶ 14. The record belies these assertions. As the trial court found, defendant took the position at trial that brother was the aggressor and that defendant was trying to protect his family from brother's assaultive conduct. Brother testified that defendant had picked a fight with him for "running his mouth" about defendant sleeping with his stepdaughter. Brother stated that while this was apparently the reason for the fight, defendant's accusations were untrue — he had never made such statements but had overheard someone else making these statements. Despite brother telling defendant this, defendant did not believe him.

¶ 15. In light of the evidence, the court did not err in concluding that the statements about the basis for the parties' dispute were not offered or admitted into evidence for their truth but rather to explain brother's account of the way in which the offenses occurred, and defendant's purported intentions, motivations, and state of mind associated with the alleged offenses. There was no assertion at trial that the statements were believed to be true, nor was there any recitation of specific facts beyond the general nature of the statements purportedly made.

¶ 16. The trial court similarly did not abuse its discretion in allowing the State to revisit the basis for the fight on rebuttal. See State v. Bessette, 148 Vt. 17, 19, 530 A.2d 549, 550 (1987) (recognizing that trial court "has wide discretion in matters of trial conduct and evidentiary rulings, including the admission of rebuttal testimony," and that "[u]nless the exercise of this discretion causes undue hardship or results in prejudice to the defendant, it will not be disturbed on appeal"); see also United States v. Tejada, 956 F.2d 1256, 1266 (2d Cir. 1992) (explaining that "[t]he function of rebuttal evidence is to explain or rebut evidence offered by an opponent," and trial court "has wide discretion in determining whether to permit evidence on rebuttal"). In allowing the State to recall brother, the court reiterated that the evidence concerning defendant's stepdaughter was being offered, not for its truth, but rather as probative of the origins of the argument — factors potentially relevant to the jury's consideration of who was

the aggressor. As previously discussed, defendant's daughter testified that brother was the aggressor while defendant remained calm and tried to get brother to leave the premises. Evidence showing that defendant was upset with brother and that defendant, rather than brother, started the fight, served to rebut this testimony.

¶ 17. ■ ■ In reaching our conclusion, we certainly do not condone the prosecutor's act of pointing out defendant's stepdaughter in the courtroom, nor the questioning of defendant's daughter about the current status of any relationship between defendant and his stepdaughter. These matters had nothing to do with the issues before the jury. See *State v. Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977) ("The longstanding rule in Vermont is that counsel should confine argument to the evidence of the case and inferences properly drawn from it, and must avoid appealing to the prejudice of the jury."). Nonetheless, the record as a whole does not demonstrate that the admission of evidence about defendant's alleged relationship with his stepdaughter — evidence that was not offered for its truth — warrants reversal. Evidence about what might have prompted the fight was relevant for the purposes identified by the trial court, and the court acted within its discretion in concluding that its probative value outweighed its prejudicial effect. See *State v. Porter*, 2014 VT 89, ¶ 26, 197 Vt. 330, 103 A.3d 916 ("The trial court has broad discretion to balance the probative value of evidence against its prejudicial effect, and we will reverse its decision only if discretion was withheld or exercised on grounds clearly unreasonable or untenable."). We reiterate, as did the trial court, that no party alleged that defendant was in fact having an affair with his stepdaughter and there was no evidence that any party believed this to be true.

¶ 18. ■ Finally, we reject defendant's assertion that the prosecutor was obligated to alert the court before questioning witnesses about the basis for the dispute between defendant and his brother. The cases cited by defendant to support this contention are inapposite. The prosecutor was not trying to introduce evidence of defendant's prior bad acts or suggest that he acted in conformance with a particular character trait. Cf. *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989) (holding that it was error for trial court to permit cross-examination of defendant about

prior misconduct that resulted in acquittal eighteen years earlier because such evidence was inadmissible, and absent any reason to believe such evidence would be admissible, prosecutor acted imprudently in "preempt[ing] the trial judge's opportunity to consider, before any damage might be done, whether to allow such novel questioning"); *People v. Pratt*, 759 P.2d 676, 684-85 (Colo. 1988) (holding that when cross-examining character witness concerning other bad acts of defendant, party should obtain favorable ruling from trial court prior to attempting to admit the evidence so as to avoid inadvertently prejudicing or confusing the jury). The prosecutor was not trying to establish the truth of the affair allegations, and his inquiry was not "novel," inherently prejudicial, or made in bad faith. The prosecutor similarly did not try to "put as many of the details as possible before the jury," as defendant contends, and the court was not obligated to step in sua sponte to limit such evidence. Cf. *State v. McCarthy*, 156 Vt. 148, 153-58, 589 A.2d 869, 872-75 (1991) (finding, in child sex-abuse case, that prosecutor "crossed the line" in cross-examining character witness about reports that defendant had also molested another child, explaining that prosecutor had "abandoned the notion that he was testing the witnesses' opinions of defendant's character and put as many of the details of the allegation as possible before the jury" in attempt to show that given defendant's past act, he was more likely to have committed charged crime). Defendant's first claim of error is without merit.

## II.

¶ 19. We turn next to neighbor's testimony. Defendant argues that the State failed to lay a sufficient foundation to confront neighbor with the contents of her prior statement. According to defendant, neighbor testified that she did not "write" or author the statement and she was not present when it was notarized. Defendant further argues that the court erred by preventing him from inquiring into the circumstances under which the statement was made, although defendant does not claim that he suffered any prejudice from any of these alleged errors.

¶ 20. ■ ■ We reject defendant's challenges to the use of this statement. Neighbor repeatedly acknowledged that she had signed the statement in question. She testified that she wrote it. She then clarified that brother's wife had typed it while she dictated

its contents. The State was not required to show that the statement was notarized. *State v. Lupien*, 135 Vt. 30, 32, 370 A.2d 196, 198 (1977) ("[A] witness may be impeached by use of prior statements inconsistent with his trial testimony regardless of the formalities attending the utterance of the prior inconsistent statements."). Indeed, "the form of the prior inconsistent statement is immaterial when this statement is used to impeach the credibility of a witness." *Id.* There was also no question about the authenticity of this document.

¶ 21. As the trial court ruled, defendant's challenges to this statement related to its probative value, not to its admissibility. This includes defendant's objection that neighbor was not present when the document was notarized, his objection that neighbor was living with brother and his wife at the time the statement was written, and defendant's contention that the writing did not reflect what neighbor had actually intended to say. Defendant could, and did, elicit such evidence on cross-examination. We agree with the trial court that sufficient foundation evidence was presented to sustain the use of the writing in impeachment and references to it in the examination of neighbor.

¶ 22. We are equally unpersuaded by defendant's assertion that the court erred by preventing him from inquiring into the circumstances under which the statement was made. The record indicates that defendant sought to introduce evidence that in November 2012, at the time neighbor produced her first written statement indicating that brother had lied, neighbor suggested that brother would "give girls pills to change their story." The State objected to this line of inquiry. Defendant argued that this "forewarning" statement by neighbor was relevant because, at the time of her second statement in June 2013, neighbor was at brother's house "getting pills" from brother. The court questioned why defendant could not examine neighbor about her "operative calculus" in making her statement so as to avoid improper examination as to collateral matters. It sustained the objection, finding that defendant could not use extrinsic incidents or evidence to attack neighbor's character.

¶ 23. ■ ■ We need not decide if defendant should have been allowed to pursue this inquiry at trial. Even assuming that the court erred, defendant identifies no prejudice that resulted from the exclusion of this evidence, and we find none. Neighbor was not

present during the fight. She repeatedly stated that defendant "would change his story all the time." She testified that defendant told her that he beat up brother and that he "punched [brother] so hard that he went flying from the trash to his mom's bedroom." She only reluctantly acknowledged her statement that recited what defendant had allegedly told her about lying to police. She conceded that she was living with brother and his wife at the time the statement was written. She also admitted writing another statement, closer in time to the fight, in which she recited a different version of events as allegedly told to her by brother. Looking at the totality of neighbor's testimony, as well as the entire trial record, we are persuaded that any error in precluding defendant from inquiring further about the circumstances surrounding the second statement was harmless beyond a reasonable doubt. See *State v. Malshuk*, 177 Vt. 475, 478, 857 A.2d 282, 286-87 (2004) (mem.) (in determining whether exclusion of impeachment evidence constituted reversible error, "[w]e treat the damaging potential of the excluded impeachment evidence as fully realized, and if it is clear beyond a reasonable doubt that defendant would have been found guilty even if the proffered evidence had been admitted, the court's ruling will be deemed harmless error"). It is clear, as the State argues, that this case did not turn on whether neighbor's second written statement was properly used to impeach neighbor's claim not to remember defendant's admissions that he had lied to police.

## III.

¶ 24. Defendant next argues that the prosecutor improperly led the State's witnesses throughout the trial. According to defendant, the prosecutor was testifying instead of allowing the witnesses to testify. Defendant acknowledges that he did not object to many examples of what he considers leading questions, but he asserts that when he did object, he was often overruled. According to defendant, the leading questions interfered with the jury's ability to determine the credibility of witnesses.

¶ 25. We find no error. Defendant first refers to the prosecutor's examination of neighbor. As the trial court found, neighbor was a hostile witness in that she denied having made certain statements set forth in a writing that she acknowledged as hers. The leading questions involving neighbor were not error. See

V.R.E. 611(c) ("When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."). For a similar reason, the prosecutor did not err in asking several leading questions during his examination of defendant's stepson. In the exchange cited by defendant, the State was essentially impeaching the stepson with a prior statement that he had made to police.

¶ 26. The final example provided by defendant involves the prosecutor's questioning of brother on redirect. The record shows that on cross-examination defense counsel asked brother about a statement that he had provided to police shortly after the fight and questioned why certain things were not included in the statement. Brother testified that he had been instructed by police to include only the "highlights." On redirect, the prosecutor sought to emphasize that brother had included the "highlights" of the fight by reciting statements from the statement made to police and asking brother if they were true. The trial court allowed the questions, characterizing them as a "summation of the point."

¶ 27. Defendant fails to show that the court abused its discretion in making its ruling. *State v. Goyet*, 120 Vt. 12, 19-20, 132 A.2d 623, 630 (1957) (explaining that trial court has discretion in ruling on objection that party has asked leading question, and party challenging ruling must show abuse of discretion and demonstrate that he was prejudiced by the ruling). In the present case, the prosecutor was not testifying. As reflected above, he was reciting brother's own words and asking brother to verify them. Defendant was not prejudiced by the prosecutor's actions.

¶ 28. As to defendant's remaining examples of what he believes were improperly leading questions during trial, cited in a footnote with no accompanying argument, we have reviewed the trial transcript and find no reversible error. The prosecutor did not ask an inappropriate amount of leading questions, and the concerns associated with such overuse are not implicated here. Cf. *United States v. Durham*, 645 F.3d 883, 891 (7th Cir. 2011) (noting that use of leading questions "may supply a false memory" in friendly witness or inhibit jury's ability to "make credibility determinations" if permitted in "controverted substantive areas" (citations omitted)). The prosecutor did not "cross[ ] the line from developing a witness's testimony to effectively testify[ing] for that witness." *Id.*

## IV.

¶ 29. Defendant next argues that the prosecutor, during trial and during his closing arguments, made improper comments on the evidence and made statements of fact from outside the record. In support of this contention, defendant cites an exchange between the prosecutor and neighbor, and another between the prosecutor and daughter. Defendant also points to several statements in the prosecutor's closing argument. Defendant acknowledges that he did not object to most of these statements, but argues that plain error exists.

¶ 30. As defendant recognizes, "[p]lain error exists only in extraordinary situations where it is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." *Bruno*, 2012 VT 79, ¶ 33 (quotation omitted). We find no plain error here. We agree with the State that the prosecutor's comments were in fact questions and were understood as such at trial, or were not otherwise plain error.

¶ 31. In the first exchange between the prosecutor and neighbor cited by defendant, the prosecutor was attempting to get neighbor to acknowledge the content of her prior written statement. The prosecutor asked neighbor to read a sentence from her statement to herself and then asked, "[w]hat did [defendant] say he lied about?" Neighbor responded that "he didn't tell me what he lied about." The prosecutor stated, "But that's not what your statement says," and neighbor responded, "I know." Defendant did not object during this exchange. We conclude that the prosecutor was not commenting on the witness's testimony in an improper way, as defendant contends. He was effectively asking a question of the witness. This was not plain error.

¶ 32. Defendant next complains about the prosecutor's cross-examination of defendant's daughter. He cites, as an example, the following exchange. The prosecutor asked daughter if she had had a chance to review a statement that she had provided to police shortly after the fight. Daughter responded that she had not, and the prosecutor stated "[t]hat might explain why there are inconsistencies between the statement and your testimony here today." Daughter replied, "I don't know how that is because everything on that statement is everything I said."

¶ 33. Defendant refers to several other exchanges between the prosecutor and daughter, which he asserts demonstrate improper

commentary on the witness's answers and answering questions for the witness if the prosecutor was not satisfied with her responses. This includes a comment by the prosecutor that the police had gone to brother's house because brother called them; a statement that "the jury is going to decide" if defendant shoved brother; and an exchange about whether daughter had smelled beer on brother. According to defendant, the prosecutor's examination of this witness "was so imbued with improper commentary and statements of fact by the prosecutor that it seemed that he was arguing with her, not questioning her." Again, defendant did not object to any of this testimony below.

¶ 34. None of these examples, alone or together, rise to the level of plain error. While it would have been better practice for the prosecutor to ensure his questions were framed appropriately, many of his comments appear to have been understood in context as questions. Even if they were not, we discern no prejudice sufficient to warrant reversal resulting from the examples cited, including from the prosecutor's statement that the jury would decide the facts, or from the prosecutor's comment about defendant's daughter being the only witness to testify that brother smelled like beer. Contrary to defendant's characterization, our review of the record demonstrates that, in cross-examining this witness, the prosecutor was fulfilling his "duty to present the State's case with earnestness and vigor, using every legitimate means to secure a just conviction." *Lapham*, 135 Vt. at 406, 377 A.2d at 257. His examination was within the bounds of propriety.

¶ 35. Finally, defendant points to several statements in the prosecutor's closing argument, including the prosecutor's statement that "the most disappointing aspect of this case was the attempt of [daughter] . . . not quite a year after the incident occurred, to try to change her testimony in substantial ways *contradicting her own testimony.*" Defendant maintains that there was no prior testimony for defendant's daughter to contradict, only a statement to the police, and that this statement was never entered into evidence nor had daughter acknowledged that it was inconsistent with her testimony. Defendant also complains about the prosecutor's statement that daughter's testimony might be motivated by her desire "to help out a father or a parent" and that "it's against the law to falsely testify." Defendant asserts that, following this statement, the prosecutor explained to the jury the evidence he thought was reliable and tried to clarify what he

thought was a misstatement by a witness. Finally, defendant argues that the prosecutor recited the contents of neighbor's written statement even though that statement was not in evidence.

¶ 36. ▮▮ ▮▮ Defendant did not object to any of these statements below, and we find no plain error. See *Bruno*, 2012 VT 79, ¶ 33 (reciting plain-error standard); see also *State v. Martel*, 164 Vt. 501, 506, 670 A.2d 845, 849 (1995) ("Comments made during a closing argument will not amount to plain error unless they are so manifestly and egregiously improper that there is no room to doubt the prejudicial effect."). It is not clear whether the prosecutor was referring to inconsistencies in the trial testimony of daughter or inconsistencies between her trial testimony and the prior statement that she made to police. Certainly, it was fair to say that inconsistencies in her account existed, regardless of whether daughter acknowledged these inconsistencies or not. Even if the prosecutor mistakenly referred to a prior statement as testimony, defendant fails to show that this misstatement satisfies the plain-error standard recited above.

¶ 37. ▮▮ The remaining statements cited by defendant similarly do not constitute plain error. The prosecutor's comment that lying under oath constituted perjury may not have been proper, but it was not "so manifestly and egregiously improper that there is no room to doubt the prejudicial effect." *Martel*, 164 Vt. at 506, 670 A.2d at 849; see also *State v. Halley*, 637 N.E.2d 937, 942-43 (Ohio Ct. App. 1994) (recognizing that prosecutor's accusations or reminders of perjury are generally improper but finding no prejudice where such reminder provided to witness prior to testifying because misconduct had no effect on witness's testimony or on outcome of trial). The prosecutor was not trying to intimidate a witness on the stand, and he did not "blatantly [state] his opinion" that numerous defense witnesses lied under oath at trial. *State v. Rehkop*, 2006 VT 72, ¶ 38, 180 Vt. 228, 908 A.2d 488 (finding plain error where prosecutor expressed personal belief in closing argument that defense witnesses were lying and declared that the witnesses were trying to evade perjury charges by claiming not to remember certain events).

¶ 38. As indicated above, defendant complains that the prosecutor "went on to explain to the jury that evidence he thought could be relied upon." We have reviewed the transcript pages referred to and find no plain error. To the extent that defendant refers to

the prosecutor's suggestion that stepson was a witness the jury could "believe," we note that the stepson did not witness, or testify to, defendant punching brother. The prosecutor's minor "clarification" of the evidence cited by defendant — where the prosecutor indicated that stepson probably meant to say that defendant pushed brother to the "floor" as opposed to the "ground" — was not plain error. Finally, neighbor did testify to the statement she had previously written, and it was appropriate for the jury to rely on this statement in assessing neighbor's credibility. The prosecutor's failure to specify that this statement was offered to impeach neighbor rather than as substantive evidence does not constitute plain error.

## V.

¶ 39. We turn last to defendant's assertion that the evidence was insufficient to support his disorderly-conduct conviction. According to defendant, the trial court erred in interpreting the law on public inconvenience and it eliminated the State's burden to show actual "public inconvenience" as defined by the law. In support of this contention, defendant cites to an argument raised at a hearing on his motion to dismiss for lack of probable cause. He appears to argue that the trial court made an erroneous ruling at the probable-cause hearing.

¶ 40. ▮▮▮ To the extent that defendant is challenging the court's probable-cause determination, that challenge is untimely. *State v. Norton*, 147 Vt. 223, 229, 514 A.2d 1053, 1057 (1986) (explaining that a "challenge to probable cause following trial and conviction is untimely" because purpose of probable-cause requirement "is to assure that persons are not proceeded against criminally without good reason," and if "case is sufficient to go to the jury, and if the jury finds guilt beyond a reasonable doubt, then there was probable cause to prosecute" (quotation and citation omitted)).

¶ 41. ▮▮▮ Any challenge to the sufficiency of the evidence presented at trial was waived. The record reflects that defendant moved for judgment of acquittal on the disorderly-conduct charge at the close of the State's case. Counsel argued that the State failed to prove that there was any public inconvenience. The court denied the motion. Defendant failed to renew the motion either at the close of the evidence or within ten days after the jury had rendered its verdict. He thereby waived his right to challenge the

sufficiency of the evidence. See *State v. Faham*, 2011 VT 55, ¶ 15, 190 Vt. 524, 21 A.3d 701 (mem.) (defendant waived argument that evidence was insufficient to support his conviction where he failed to renew motion for judgment of acquittal at close of evidence) (citing cases); see also *State v. Crannell*, 170 Vt. 387, 407-08, 750 A.2d 1002, 1019 (2000) (reiterating that where defendant fails to move for acquittal at trial's end or in post-trial motion, issue is not preserved for appellate review, even when defendant moved for acquittal after State's case), *overruled on other grounds by State v. Brillon*, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108.

¶ 42. Having found no errors, we reject defendant's assertion that the cumulative effect of errors in the admission of evidence, improper comments and argument, and leading questions, warrants reversal. See *State v. Billado*, 141 Vt. 175, 184, 446 A.2d 778, 783 (1982) (reaching similar conclusion, explaining that because "no prejudice resulted from any of the instances of alleged misconduct, there could not have been a cumulative prejudicial effect").

*Affirmed.*