Robinson, J.,
¶ 29. concurring. The majority acknowledges our holding in State v. Porter that even in the absence of a duty to collect evidence, the negligent conduct of police may be sufficiently prejudicial to the defense to warrant sanctions, 2014 VT 89, ¶ 29, 197 Vt. 330, 103 A.3d 916, but then without analysis or explanation either implicitly overrules that holding or carves out an exception for videotape evidence — in an era when the significance of such *166 evidence is growing. This case does not require us to address this question, and, although I concur in the mandate, I cannot join the majority’s reasoning.
¶ 30. This Court has long recognized that even though police do not have a duty to collect particular evidence (as opposed to preserving evidence already collected), “‘there could arise situations in which negligent conduct of the police is sufficiently prejudicial to the defense to warrant’ sanctions.” Id. ¶ 29 (alteration omitted) (quoting State v. Wheelock, 158 Vt. 302, 312, 609 A.2d 972, 978 (1992)). Whether the conduct of police is “negligent” is presumably assessed with reference to the norms of reasonable police investigation, since we have repeatedly recognized that there is no general statutory or constitutional duty to collect particular evidence at a crime scene. See id. (“The police do not have a duty to collect all evidence that could potentially favor the defense.”) (citing State v. Ware, 881 P.2d 679, 683 (N.M. 1994) (stating rule that prosecution “generally has no duty to collect particular evidence at the crime scene”)).
¶ 31. In Porter we concluded that the Bailey test — developed to address claims of lost, destroyed, or unpreserved exculpatory evidence — was “an adequately flexible method to determine the appropriate sanction” in the class of cases in which the failure to collect evidence in the first place was sufficiently negligent to warrant consideration of sanctions. Id.
¶ 32. In this case, the majority acknowledges Porter, but then holds that because we have held that “there is no legal duty to record roadside stops, here the officer’s failure to record the stop was not negligent, despite the superior court’s finding to the contrary.” Ante, ¶ 16. The Court’s reasoning that because there is no statutory or constitutional duty to record roadside stops, the failure to do so here could not be deemed negligent and the Bailey analysis is inapplicable is squarely at odds with our reasoning in Porter that even though police have no duty to collect evidence, the failure to do so in a particular case may be so negligent and prejudicial as to warrant consideration of sanctions. It isn’t clear whether the majority is implicitly overruling Porter, limiting its reach to the extraordinary circumstance of failure to procure a bloody knife lying next to the body in a murder case, or merely carving out an exception to the Porter analysis for a specific kind of evidence — namely, videotaped evidence of roadside stops. The majority does not offer a rationale for any of these approaches.
*167 ¶ 33. I am not warring with our holding in State v. Dimick, 173 Vt. 547, 790 A.2d 435 (2001) (mem.). In that case, we rejected the argument that the Vermont State Police Rules & Regulations, Operational Policies & Procedures created a statutory duty to videotape all roadside stops and DUI sobriety tests. Id. at 549-50, 790 A.2d at 437-38. We noted that the rules merely required officers to tape “whenever possible.” Id. at 550, 790 A.2d at 437. I am merely arguing that in this day and age, when dashcam and bodycam videos are becoming such a standard part of policing in many departments,* we should not, without far more consideration and analysis, carve this one category of evidence out from the general rule articulated in Porter, which recognizes that in some cases a failure to collect evidence (that officers have no statutory or constitutional duty to collect) may be so negligent with reference to reasonable policing norms and so prejudicial as to warrant further consideration by the Court. Without more information than we have here, I cannot agree that turning off a dashcam or bodycam at a critical moment can never constitute as serious a departure from accepted police practices, and one that is just as prejudicial to a defendant, as failing to collect a critical piece of tangible evidence.
¶ 34. We don’t have to take such an extreme step to resolve this case. After concluding, based on the testimony concerning this particular case, that the officer’s failure amounted to gross negligence, the trial court applied the Bailey test and concluded that “it would be inequitable to suppress evidence or to dismiss the State’s case,” but that a corrective instruction to the jury at trial would be appropriate. As the analysis in the last two paragraphs of the majority’s opinion reflects, the trial court’s conclusion was well supported. The majority could have declined to reach the question of whether dashcam video evidence of a roadside stop is subject to a blanket exemption from the scrutiny called for in State v. Porter on the basis that even if the trial court properly applied the Bailey test, its conclusion that Bailey does not afford defendant the relief she seeks is affirmable. That would have left to another day, and perhaps a case in which we are presented with a record that more thoroughly elucidates the *168 role of dashcam videos in contemporary policing in Vermont, the question of whether an across-the-board exception for videotape evidence is appropriate.
¶ 35. For the above reasons, I concur in the majority’s affir-mance of defendant’s conviction, but do not join the reasoning in ¶¶ 13-16 of the majority opinion.

 On a national basis, in 2013, 68% of local police departments used in-car cameras, up from 61% in 2007, and 32%' used body-worn cameras. B. Reaves, U.S. Dep’t of Justice, Local Police Departments, 2013: Equipment and Technology 3 (2015), http://bjs.gov/content/pub/pdf/lpdl3et.pfd [https://penna.cc/Q8HS-GBAS].