NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 86

No. 2019-141

| | |
|---|---|
| In re B.B., Juvenile | Supreme Court |
| | On Appeal from<br>Superior Court, Orleans Unit,<br>Family Division |
| | September Term, 2019 |

Howard E. Van Benthuysen, J.

Michael Rose, St. Albans, for Appellant.

David Tartter, Deputy State's Attorney, Montpelier, for Appellee.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Skoglund, J. (Ret.), Specially Assigned


¶ 1.  **REIBER, C.J.**  Youth B.B. was charged with aggravated assault based on allegations from August 2016. In November 2018, B.B. filed a motion for youthful-offender status. The State opposed the motion. Following a hearing, the trial court concluded that B.B. had not met his burden to prove by a preponderance of the evidence that public safety would be protected if he were granted youthful-offender status, and denied the motion. B.B. requested permission to appeal to this Court, which we granted. We affirm.

¶ 2.  Evidence at the youthful-offender-status hearing included testimony by B.B.'s grandmother, a report prepared by the Department for Children and Families (DCF), and testimony from the DCF worker who created the report. Based on the evidence presented, the trial court made the following factual findings. B.B. was twenty years old at the time of the hearing. He has

struggled with alcohol and heroin addiction in the past. Although B.B.'s grandmother testified that he was no longer using heroin, B.B. did not live with his grandmother full-time. B.B.'s residential and employment situations were unstable. The court noted that there was "some evidence that [B.B.] [was] engaged in personal counseling," but there was "no objective evidence to that effect." There was prima facie evidence that B.B. "engaged in a new violent act" while he was "under the influence of alcohol," even though B.B. was underage and was subject to a condition of release that required him to refrain from drinking alcohol.

¶ 3. The court also addressed the diagnostic tool DCF used in creating its report, the "youth assessment and screening instrument" or "YASI." The assessment was largely based on B.B.'s and his grandmother's self-report in an interview with DCF that asked about his "legal history, mental health treatment, substance abuse needs, attitudes, beliefs, employment," and "family history." The YASI assessment indicated that B.B. was at moderate risk to reoffend, and DCF therefore recommended that B.B. be granted youthful-offender status. The court, however, found that the YASI tool was not "persuasive . . . in this context." The court noted that the YASI tool failed to take into account that there was probable cause for a new violent offense; it was based on B.B.'s self-report; it did not consider whether B.B. was still using alcohol or heroin; it did not take into account the seriousness of the victim's injury in the aggravated assault; and the DCF worker testified that the YASI tool was "flawed."

¶ 4. On appeal, B.B. argues that the trial court erred in denying him youthful-offender status based on alleged flaws in the YASI report. B.B. also contends that the trial court committed legal error in how it assessed whether public safety would be protected if B.B. were granted youthful-offender status. B.B. does not challenge the trial court's factual findings. We review the trial court's decision to deny youthful-offender status for abuse of discretion. See State v. J.S., 2018 VT 49, ¶ 22, 207 Vt. 379, 189 A.3d 552 (applying abuse-of-discretion standard in deciding whether trial court erred in revoking defendant's youthful-offender status).

2

¶ 5.     The youthful-offender statutory scheme provides the following.  If a criminal defendant is under twenty-two years old and was at least twelve years old at the time of the alleged offense, a motion may be filed with the criminal division requesting youthful-offender status.  33 V.S.A. § 5281(a).  DCF will offer the youth a "risk and needs screening."  Id. § 5280(d).  DCF will also file a report with the family division that provides "(1) a recommendation as to whether diversion is appropriate for the youth because the youth is a low to moderate risk to reoffend; (2) a recommendation as to whether youthful offender status is appropriate for the youth; and (3) a description of the services that may be available for the youth."  Id. § 5282(a)-(b) (directing DCF to prepare report unless "the State's Attorney refers the youth directly to court diversion pursuant to subsection 5280(e) of this title").  Then the family division will hold a hearing to determine whether youthful-offender status is appropriate.  Id. § 5283(a) (directing that family division shall hold hearing "[u]nless the State's Attorney refers the youth directly to court diversion").  The burden of proof is on the moving party to show by a preponderance of the evidence that the youth should be granted youthful-offender status.  Id. § 5283(d).  In making its determination, "the court shall first consider whether public safety will be protected by treating the youth as a youthful offender."  Id. § 5284(a).  Only if the court finds that public safety will be protected may the court then go on to consider the other statutory factors.  Id.  The court may schedule an additional hearing "to obtain reports or other information necessary for the appropriate disposition of the case."  Id. § 5283(e).

¶ 6.     Here the trial court determined that B.B. did not meet his burden to show that public safety would be protected if he were granted youthful-offender status.  The court pointed to prima facie evidence that B.B. had engaged in a new violent act while under the influence of alcohol, despite being underage and under a condition of release that he not drink alcohol.[*]  The court

---

[*] We note that the trial court relied on the pending charge only to the extent that it presented prima facie evidence that B.B. had engaged in a new violent act while under the influence of alcohol, not as proven conduct.  See 33 V.S.A. § 5283(c)(1) (providing that "[h]earsay may be

3

considered this evidence within the context of B.B.'s history of alcohol and drug abuse and the aggravated-assault charge. The court also observed that there was no "punishment" in the juvenile justice system, so there was no "meaningful accountability mechanism." Additionally, the court found that B.B. had an unstable residential and employment situation. Given these facts, the trial court acted within its discretion in concluding that public safety would not be protected if B.B. were granted youthful-offender status.

¶ 7. B.B. contends that DCF failed to meet its own statutory duty to provide the court with an appropriately prepared report, and the trial court has penalized B.B. for DCF's failure. B.B. compares his situation to In re D.S., in which we affirmed that "stagnation caused by factors beyond the parents' control could not support termination of parental rights," 2016 VT 130, ¶ 7, 204 Vt. 44, 162 A.3d 1254 (quotation omitted), and State v. Porter, in which we held that the State must "disclose to the defense any exculpatory material within its possession or control," 2014 VT 89, ¶ 28, 197 Vt. 330, 103 A.3d 916, overruled on other grounds by State v. Discola, 2018 VT 7, 207 Vt. 216, 184 A.3d 1177.

¶ 8. B.B.'s argument lacks merit. He bore the burden of persuasion here. 33 V.S.A. § 5283(d). Unlike the cases B.B. cites, this is not a situation where DCF withheld information or where the trial court's denial was due to factors beyond B.B.'s control. B.B. could have presented evidence that would have addressed the questions the YASI tool left unanswered, and he did not. Furthermore, assuming, without deciding, that DCF erred in its preparation, the court did not penalize B.B. for any error. The court simply came to a different conclusion than DCF, and it was within its discretion to do so. Nor was the court required to schedule another hearing to obtain additional information when B.B. failed to meet his burden of persuasion.

admitted and may be relied on to the extent of its probative value" in youthful-offender-status hearing). B.B. does not challenge the court's reliance on the pending charge.

4

¶ 9. B.B. also argues that the trial court committed legal error when it considered the availability of punishment in deciding whether youthful-offender status is appropriate, noting that punishment is not listed as a factor to consider in the statute. Further, B.B. challenges the court's statement that "[t]he only consequence that a juvenile judge can impose . . . is to place the youth into DCF custody," noting that a judge could revoke youthful-offender status if necessary.

¶ 10. In discussing the availability of punishment, the court reasoned that the juvenile justice system provided no "mechanism" for "accountability" that would protect the public because it is "entirely a rehabilitative system" and "has no punishment." The court considered the practical consequence of placing B.B. in youthful-offender status within the context of the other findings the court made regarding B.B.'s substance abuse, the aggravated-assault charge, and the prima facie evidence of a new violent crime committed while under the influence of alcohol. In this situation, it was not error for the court to observe that punishment can provide accountability and to consider whether B.B. could be held accountable as a youthful offender such that public safety would be protected, even though the juvenile justice system would not provide punishment. Nor did the court err in not considering the future possibility of revocation. The revocation of youthful-offender status is an available remedy for violating juvenile probation. See id. § 5285(a). It is not a preventative measure but is instead a consequence of violating probation. The court did not err in failing to consider this after-the-fact remedy in determining whether youthful-offender status would protect public safety.

Affirmed.

FOR THE COURT:

_____
Chief Justice