*Scott v. State*, No. 495-9-18 Wncv (Tomasi, J., July 10, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 495-9-18 Wncv |

Earl Scott,
     Plaintiff

     v.

State of Vermont,
     Defendant

## Opinion and Order on Defendant's Motion for Summary Judgment

Defendant State of Vermont seeks summary judgment in this action brought under Vermont's Innocence Protection Act (VIPA). 13 V.S.A. §§ 5561–5577. The State contends that the undisputed material facts establish that the Plaintiff Earl Scott executed a General Release that would preclude the VIPA claim; that he is not "actually innocent" of the underlying crimes, as is required by the VIPA; and that he fabricated evidence, which precludes him from recovery under the VIPA. Relying upon various legal theories, Plaintiff disputes those conclusions. The Court makes the following determinations.

## Standard

Summary judgment procedure is properly regarded as "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is

appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c), shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994).

A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts or affidavits to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628, (1991). If the non-moving party will bear the burden of proof at trial, the moving party may be entitled to summary judgment if the non-moving party is unable to come forward with evidence supporting its case. *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989).

In assessing a motion for summary judgment, the Court views all facts and indulges all inference in favor of the non-moving party. *Price v. Leland*, 149 Vt. 518, 521 (1988).

In this instance, Defendant moved for summary judgment and submitted a statement of uncontested facts. Plaintiff's Opposition does not respond to that statement as provided in Rule 56(c). Instead, his Opposition is based largely on what he argues are controlling legal principles, as opposed to contested facts necessitating a trial. Accordingly, pursuant to Vt. R. Civ. P. 56(e)(3), the Court deems Defendant's statement of uncontested material facts as true for purposes of this motion.

Factual and Procedural Background

Based on the summary judgment record, the Court gleans the following undisputed material facts.

When Plaintiff was 14 years old, he babysat for his cousin BS, who was five or six. Years later, in 2010, Plaintiff was 22. In connection with an investigation of the above incidents, Plaintiff provided a statement under oath to the police. He told them that he had licked BS's vagina two or three times and put his penis partially into her vagina a couple of times. He admitted that he was sexually attracted to her. He also sent BS an apology letter saying he was sorry for licking her vagina and placing his penis inside her. His admissions to the police mirrored the factual assertions made by BS concerning the events.

In this action, Plaintiff maintains that he did not lick or penetrate BS and states that he lied to the police in 2010. Nonetheless, he still admits to kissing her on the lips, to touching her vagina with his fingers a number of times, to rubbing his penis against her butt and vagina one or two times, to the fact that he was sexually attracted to BS, to the fact that either he was aroused by her or she towards him in connection with those events, to that fact that he convinced her to engage in the conduct by saying everyone did it, and to the fact that he performed the acts because he was sexually curious.

Following his statement to the police, Plaintiff was charged with sexual assault of a minor in *State v. Earl Scott*, Docket No. 182-4-10 Oscr. The allegations of the Information indicated the events took place in 2003 or 2004, when Plaintiff

3

was between 15 and 17. Ultimately, Plaintiff pled to an amended charge of Lewd and Lascivious Conduct with a Child and was sentenced to 2-to-5 years to serve. Plaintiff raised no issue as to the dates of the offense.

Later, while incarcerated, Plaintiff filed an action for post-conviction relief. He claimed that the dates of the offense were incorrect and that they had, in fact, occurred a year earlier. If the proper incident dates were used, Plaintiff maintained that the matter should have been heard in juvenile court (despite his then-current age), rather than criminal court, or, perhaps, in neither court. Plaintiff also asserted that the plea colloquy employed in connection with his change of plea did not comport with Vt. R. Crim. P. 11. In May 2016, the State conceded that the plea colloquy had been insufficient. It told the court at a May status conference that it would not oppose vacating the conviction. The court requested the defense submit an order granting the PCR, vacating the conviction, and remanding the case to the Criminal Division. The defense submitted the proposed order on June 22, 2016. The court signed the order on July 14, 2016.

In connection with his incarcerative jail term, Plaintiff also claimed that he had been denied some credit for "good time" and that it resulted in him serving more time than he should have behind bars. Plaintiff was represented by counsel with regard to that claim. The Plaintiff and the State settled the matter on July 12, 2016. At that time, Plaintiff was aware that the State did not oppose vacating his conviction and that it was about to be vacated by the court. He signed a General

4

Release voluntarily and without duress. In settling his claim, Plaintiff executed the following General Release:

<u>General Release</u>

For and in consideration of the sum of Forty Thousand and NO/100 DOLLARS ($40,000), lawful money of the United States, the receipt and sufficiency of which is hereby acknowledged, the undersigned Earl Scott, Jr. ("Releasor") does for himself, his representatives, executors, guardians, administrators, successors, and assigns, hereby release and forever discharge the STATE OF VERMONT, along with its agencies, departments and political subdivisions ("Releasees"), and their employees, officers, directors, agents, adjusters, insurers, attorneys, contractors, representatives, administrators, successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, damages, judgments, executions, claims for any and all personal injuries, pain and suffering, property damage, medical payments, civil rights violations, and demands whatsoever, in law or in equity, including any claims for attorneys' fees or costs, and any and all liens which Releasor had, now has or which hereafter he and/or his heirs, representatives, executors, insurers, administrators, successors, and assigns can, shall, or may have against Releasees and their employees, officers, directors, agents, adjusters, insurers, attorneys, contractors, representatives, administrators, successors and assigns for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world up to the date of execution of this document, *and particularly*, but without in any manner limiting the foregoing, on account of all issues and claims for relief that could have been raised based on his term of incarceration commencing January 5, 2012, and terminating on March 23, 2016, resulting from his conviction in the matter entitled *State v. Earl Scott*, Docket No. 182-4-10 Oscr. By this agreement, Releasor further extinguishes any unknown, undiscovered, and undiscoverable claims on behalf of himself or his successors, heirs, representatives or assigns, and all persons who could in any way be subjected to these claims, including principals, members, employees, agents, officers, shareholders and insurers.

<u>Analysis</u>

The State maintains that the General Release bars this case, that Plaintiff cannot establish that he is "actually innocent" of the criminal conduct described

5

above, as that phrase is used in the VIPA, and that he fabricated evidence in violation of the terms of the VIPA.  Plaintiff contests each point.

I.   <u>The Scope of the General Release</u>

The General Release is a contract.  Typically, "contractual terms are to be interpreted based on their plain meaning," *In re Cole,* 2008 VT 58, ¶ 19, 184 Vt. 64, 73, without resort to extrinsic evidence to understand them, *see Main St. Landing, LLC,* 2006 VT 13, ¶ 7, 179 Vt. 583, 584-85 (if writing unambiguous, "the plain meaning of the language controls without resort to rules of construction or extrinsic evidence").  Where the written "language is clear," the Court presumes that the wording of the contract or release accurately reflects the intent of the parties.  *N. Sec. Ins. Co. v. Mitec Elecs., Ltd.*, 2008 VT 96, ¶ 28, 184 Vt. 303, 316; *see Hackel v. Vermont State Colleges*, 140 Vt. 446, 452 (1981) (intent of parties shown through language employed in document); *see also Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.,* 2004 VT 47, ¶ 8, 177 Vt. 70, 74-75 ("Where the terms of a [contract] are plain and unambiguous, they will be given effect and enforced in accordance with their language." (quotation omitted)).

There are exceptions to that rule.  As noted above, the Court is permitted to accept parole or extrinsic evidence where the phrasing or words of a contract are ambiguous.  *Kipp v. Estate of Chips*, 169 Vt. 102, 107 (1999).  It also may accept such evidence where there has been alleged fraud in connection with the contract.  *See Drown v. Oderkirk*, 89 Vt. 484, 486 (1915).

6

In addition, the Court can examine limited extrinsic evidence to assess ambiguity -- but such evidence cannot be used to "vary the terms of an unambiguous writing." *Kipp*, 169 Vt. at 107; *accord City of Newport v. Vill. of Derby Ctr.*, 2014 VT 108, ¶¶ 13-14, 197 Vt. 560, 568-69 (refusing extrinsic evidence where proposed interpretation would directly conflict with language of the contract); *Brault v. Welch*, 2014 VT 44, ¶ 14, 196 Vt. 459, 465 (court may use extrinsic evidence to "construe" deed language but not to "rewrite" it); *Hackel*, 140 Vt. at 52 (extrinsic evidence not admissible to alter the understanding of the parties as reflected in language chosen for document).

With those principles in mind, the Court turns to the language of the General Release. A review of the release supports the State's position. First, the title of the contract is "General Release." It does not say it is a limited, partial, or specific release. Instead, its title suggests a release of all claims possessed by Mr. Scott against the State.

Second, the wording used in the body of the contract is equally expansive. Plaintiff released the State from any claims he had against the State at the time of the agreement. Plaintiff released the State:

> of and from any and all manner of action and actions, cause and causes of action, suits, damages, judgments, executions, claims for any and all personal injuries, pain and suffering, property damage, medical payments, civil rights violations, and demands whatsoever, in law or in equity, including any claims for attorneys' fees or costs, and any and all liens which Releasor had, now has or which hereafter he and/or his heirs, representatives, executors, insurers, administrators, successors, and assigns can, shall, or may have against Releasees and their employees, officers, directors, agents, adjusters, insurers, attorneys, contractors, representatives, administrators, successors and assigns

7

for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world up to the date of execution of this document….

Third, the General Release barred Plaintiff from pursuing any claims against the State that could be subject to the terms of the release – even if he were unaware of the claims. It provides:

[Plaintiff] further extinguishes any unknown, undiscovered, and undiscoverable claims on behalf of himself or his successors, heirs, representatives or assigns, and all persons who could in any way be subjected to these claims, including principals, members, employees, agents, officers, shareholders and insurers.

Finally, if those broad and comprehensive waivers were not plain enough, the General Release released – and provided plain notice to Plaintiff that he was releasing – any and all claims related to his incarceration based on the Lewd and Lascivious Conduct with a Minor conviction that is the subject of the present suit. It states that the General Release "particularly" covered matters:

on account of all issues and claims for relief that could have been raised based on his term of incarceration commencing January 5, 2012, and terminating on March 23, 2016, resulting from his conviction in the matter entitled *State v. Earl Scott*, Docket No. 182-4-10 Oscr.

In the Court's view, the language of the General Release is plain and unambiguous.

Against that conclusion, Plaintiff would have the Court explore extrinsic evidence of his intent to suggest that there is a factual issue as to the scope of the release. No doubt, the General Release was executed in the context of a specific claim; but, in settling that claim, the State received a broad release. Adopting

8

Plaintiff's "construction" of the General Release would be directly at odds with the legal precedents cited above. His "interpretation" of the General Release would be in direct and irreconcilable conflict with the plain meaning of the General Release. Instead of a "General Release," it would be a "Limited Release." Instead of releasing "any and all" claims against the State, it would read "any and all claims, except a claim under the VIPA." Instead of releasing the State from "all issues and claims for relief" relating to his incarceration in *State v. Earl Scott*, it would read "all issues and claims for relief" relating to his incarceration in *State v. Earl Scott*, except a claim under the VIPA."

The Court may not so vary the terms of an unambiguous contract. Nor may it "rewrite" a contract rather than simply construe it. *Brault*, 2014 VT 44, ¶ 14, 196 Vt. at 465. As the Supreme Court has held: "Where, as here, the language used is clear and susceptible of only one possible interpretation, it must be enforced as written." *Cincinnati Specialty Underwriters Ins. Co. v. Energy Wise Homes, Inc.*, 2015 VT 52, ¶ 27, 199 Vt. 104, 114 (2015) (internal quotation omitted).[1]

Plaintiff had a claim against the State relating to his incarceration. He was represented by counsel. The parties settled the claim. In return for the payment of a certain sum, the State bargained for and obtained a General Release of "any and all" claims Plaintiff had against it. Most particularly, it received a release of all

---

[1] To the extent a writing is required to resolve a VIPA claim, 13 V.S.A. 5574(d), the broad terms of the General Release would satisfy that requirement.

9

claims relating to his incarceration in *State v. Earl Scott*. This case presents such a claim. The General Release applies to preclude the action.

II. The VIPA Claim

Leaving aside the General Release, the State maintains that Plaintiff's claim fails for two independent reasons. First, the State argues that Plaintiff has admitted sufficient conduct to establish the underlying crimes. As a result, Plaintiff cannot establish that he is "actually innocent" of the crimes as is required to prevail on the VIPA claim. Plaintiff asserts that he can establish that he did nothing on the dates set out in the Information and, more pointedly, argues that he is actually innocent of the crime because it is rightly viewed as a "delinquent offense, and that he could not have formed the intent necessary to establish the *mens rea* of the crime because it occurred when he was only 14 years old.

Second, the State points to the fact that Plaintiff fabricated evidence and committed perjury in connection with the underlying criminal investigation. The State argues that such conduct bars a VIPA claim. 13 V.S.A. § 5574(a)(4). Plaintiff counters that any false information he may have provided was "inculpatory" and that Section 5574(a)(4) would not apply on those facts.

A. Actual Innocence

The State argues that it is entitled to judgment because the undisputed material facts prove that Plaintiff cannot establish a key element of his VIPA claim – namely, he cannot show by clear and convincing evidence that he is "actually

innocent" of the offense of which he was convicted. *Id.* § 5574(a)(3). The Court agrees.

The VIPA provides that a person seeking damages must establish that he or she:

> is actually innocent of the felony or felonies that are the basis for the claim. As used in this chapter, a person is "actually innocent" of a felony or felonies if he or she did not engage in any illegal conduct alleged in the charging documents for which he or she was charged, convicted, and imprisoned.

13 V.S.A. § 5574.

The undisputed facts show that Plaintiff engaged in conduct that plainly falls within the scope of the statute proscribing Lewd and Lascivious Conduct with a Child, including his skin-to-skin touching of BS' vagina and butt. 13 V.S.A. § 2602.

Plaintiff first attempts to evade the force of that conclusion by arguing that the dates of the Information were not accurate and that there is no evidence he engaged in criminal conduct on those precise dates. He takes nothing from that contention. The date listed in an Information is not an element of the offense. *State v. Dunbar*, 152 Vt. 399, 403 (1989) ("time is not of the essence in charges of sexual assault or lewd and lascivious conduct"); *see State v. Girouard*, 130 Vt. 575, 581 (1972) (date not typically an essential element).

Further, to establish actual innocence, Plaintiff is required to show that he "did not engage in any illegal conduct alleged in the charging documents." 13 V.S.A. § 5574. Here, regardless of the date, the undisputed facts show that Plaintiff engaged in conduct that would amount to the Lewd and Lascivious Conduct with a Child described in the Information.

11

Second, the Court agrees that, at the time of offense, Plaintiff's conduct would have been described as a "delinquent act" in light of his age. The Court disagrees that such a conclusion equates with actual innocence, however. Again, Plaintiff is required to show that he "did not engage in any illegal conduct alleged in the charging documents." 13 V.S.A. § 5574. In Vermont a "delinquent act" is "an act designated a crime under the laws of this state…." 33 V.S.A. § 5102(9). *A fortiori*, a delinquent act based on conduct amounting to a crime under Vermont law, is also "illegal conduct." The upshot of Plaintiff's contrary argument is that a delinquent act based on criminal actions should somehow be considered "legal conduct" under Vermont law. Such a result stretches the language of the VIPA beyond its rightful borders. The Court concludes that the delinquent act involved in this action, Lewd and Lascivious Conduct with a Minor, would amount to "illegal conduct" under the VIPA.

Lastly, Plaintiff contends that, due to his status as a 14 year old at the time of the events, he was legally incapable of forming the specific intent needed to establish the above crime. The Lewd and Lascivious Conduct with a Child statute requires the State to establish beyond a reasonable doubt that Plaintiff engaged in the proscribed conduct "willfully." 13 V.S.A. § 2602. To act "willfully" is to act "purposefully and intentionally, and not by accident, mistake or inadvertence." *State v. Penn*, 2003 VT 110, ¶ 9, 176 Vt. 565, 567. It also demands that it show the defendant performed the relevant conduct "'with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child.'"

12

*State v. Discola*, 2018 VT 7, ¶ 23, 207 Vt. 216, 228, 184 A.3d 1177, 1186 (2018) (quoting Section 2602).

Here, Plaintiff asserts that the law presumes a child of 14 to be incapable of forming the intent necessary to commit a crime. The argument misstates Vermont law. In fact, the law presumes that a child of 14 *can* form the intent necessary to commit a crime. *State v. Learnard*, 41 Vt. 585, 589 (1869). Indeed, Vermont statutes require that certain significant felonies involving minors who have attained 14 years must begin (and sometimes will stay) in the Criminal Division. 33 V.S.A. §§ 5201(c) & 5204(a). Some of those crimes, for example: Kidnapping, plainly involve proof of specific intent. *Id.* § 5204; 13 V.S.A. § 2405 (requiring that defendant "knowing restrains" another).

Additionally, if a child were to admit to a delinquent act involving a crime, she would need to admit to the specific intent needed to sustain that crime. Vt. R. Fam. P. 1(a)(3) (imposing requirements of Vt. R. Crim. P. 11 to accepting admissions as to delinquent acts); *see also In re D.C.*, 2016 VT 72, ¶ 25, 202 Vt. 340, 356 (determining that post-conviction relief law applies to delinquency cases and noting that: "Although a delinquency adjudication is not a criminal conviction, a delinquency proceeding is substantively the same as a criminal proceeding."). As a result, the Court rejects Plaintiff's legal contention that 14 year old cannot formulate the necessary *mens rea* to sustain a conviction under Section 2602.

Plaintiff also makes a passing attempt to establish a factual dispute on this point by suggesting that he "didn't know" at the time of the events that he was not

supposed to be engaging in such conduct. As noted previously, however, Plaintiff failed to submit a statement of contested facts upon which such a claim could be predicated. As a result, the claim is not established on this record.

In any event, the summary judgment record establishes that Plaintiff was sexually attracted to BS, that he showed her or she showed him sexual arousal, that he convinced her to do the acts by saying that everyone engaged in such behavior, and that he touched her sexually because he was sexually curious. Such a showing is sufficient to establish willful/nonaccidental conduct that was intended to appeal to Plaintiff's sexual desires. It also suffices to show that there is no triable issue as to whether Plaintiff would be able to establish by clear and convincing evidence that he was "actually innocent" of the Lewd and Lascivious Conduct with a Child charge.

B.    Fabricated Evidence

The State is correct that the VIPA has an express exclusion for those persons who provided false evidence in connection with the underlying criminal proceedings. Specifically, it requires that a person seeking relief under the VIPA must establish by clear and convincing evidence that he or she: "did not fabricate evidence or commit or suborn perjury during any proceedings related to the crime with which he or she was charged." 13 V.S.A. § 5574(a)(4).

In this instance, the summary judgment record shows that, during the investigation, Plaintiff met with law enforcement. He gave a statement under oath. He provided information to the police that he placed his penis in the vagina of BS and licked her vagina. He now maintains that he did not engage in that conduct

14

and lied to the police. Such false evidence, given under oath, and in connection with the criminal investigation of his contact with BS would seem to fall within the scope of the above exclusion.

Plaintiff denies that conclusion by arguing that fabrication of evidence necessarily requires that the person submitted the evidence "in an attempt to achieve or avoid liability." Black's Law Dictionary (11th ed. 2019). In this instance, Plaintiff asserts, the false information was "inculpatory" and more damning than the truthful information. As a result, Plaintiff did not submit the false evidence to "avoid … liability."[2]

The term "fabricate evidence," as used in the VIPA has not been defined by a Vermont court. Beyond the dictionary definition set out above, the parties have not provided additional interpretations of the term from other courts across the country. Given the Court's determinations with regard to the General Release and the "actual innocence" issues, the Court believes it prudent not to rule on this legal point at present. Instead, the resolution of the issue will await a future case where it would be determinative and the matter has been fully briefed.

---

[2] Plaintiff does not explain why providing false inculpatory statements would not meet the definition because they were submitted to "achieve … liability."

<u>Conclusion</u>

In light of the foregoing, the State's motion for summary judgment is granted.

Dated this 9th day of July, 2020, at Montpelier, Vermont.

_____
Timothy B. Tomasi
Superior Court Judge